**Mary L. CYTRYNBAUM, Plaintiff,**

v.

**THE EMPLOYEE RETIREMENT PLAN OF AMOCO CORPORATION AND PARTICIPATING COMPANIES, Amoco Corporation Consolidated Welfare Benefit Plan, and Amoco Corporation as Plan Administrator of the Employee Retirement Plan of Amoco Corporation and Participating Companies, and of the Amoco Corporation Consolidated Welfare Benefit Plan, Defendants.**

No. CIV.A.00–K–1539.

United States District Court, D. Colorado.

Sept. 28, 2004.

Timothy J. Parsons, Gorsuch, Kirgis, LLP, Denver, CO, for Plaintiff.

William R. Dabney, Holland & Hart, LLP, Denver, CO, Michael S. Beaver, Holland & Hart, LLP, Greenwood Village, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff Mary L. Cytrynbaum brings this action pursuant to the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendant Amoco Corporation[1] in its capacity as the Plan Administrator of the Employee Retirement Plan of Amoco Corporation and Participating Companies. Cytrnybaum claims that upon her involuntary termination from employment with an Amoco subsidiary, she was entitled to a lump sum distribution of vested retirement benefits and extended medical insurance coverage. She also asserts a claim for civil penalties for Amoco's delay in providing her with requested plan documents, and seeks an award of her reasonable attorney fees and costs pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1). The parties have cross-moved for summary judgment on each claim. For the reasons stated below, I deny Cytrynbaum's motion and grant Amoco's cross-motion.

### Factual Background

The following facts are undisputed:

Cytrynbaum was formerly employed by Amoco Production Company in its Denver, Colorado office. By reason of this employment, Cytrynbaum was a participant in Amoco's Employee Retirement Plan ("Retirement Plan") with a vested right to re-ceive certain retirement benefits under the Plan. The terms of the Retirement Plan are set forth in a lengthy Retirement Plan Document and are also summarized in a Summary Plan Description ("SPD") contained in an Employee Benefit Handbook distributed to all Amoco employees, including Cytrynbaum. The Retirement Plan is an employee pension benefit plan subject to ERISA.

Both the Retirement Plan Document and SPD state that Plan participants can in some circumstances elect to receive retirement benefits in a lump sum payment rather than in monthly annuity payments. The Retirement Plan Document provides the lump sum payment option to participants who have vested retirement benefits and have reached either "Earliest Retirement Age" or "Normal Retirement Age." "Normal Retirement Age" according to the Plan Document is age 65, while "Earliest Retirement Age" is defined as "50 and 15 Status" or "75–Point Status." Under the Plan Document, 50 and 15 Status refers to a participant reaching age 50 and simultaneously having 15 or more years of service, and 75–Point Status refers to a participant whose age and years of service summed equals at least 75.

The separate SPD states that a Plan participant may receive "the entire value of your annuity benefit ... in a lump sum instead of monthly annuity payments" if "you are eligible for an early, normal or late retirement benefit." Joint Ex. 19 at 4.94. Elsewhere, in a section titled "Retirement Dates," the SPD states that normal retirement is retirement at age 65 and that early retirement is available for participants with 50 and 15 or 75–point status.

---

1. After this action was filed, Defendant Amoco Corporation merged into a new entity, BP Amoco Corporation, which is its corporate successor. The parties have agreed for purposes of this case to continue to refer to the Defendant and related entities as Amoco Corporation, while stipulating that the true identity of the entities so referenced are those of its appropriate successor entities.

Pursuant to the Plan Document, if there is any ambiguity between the SPD and the Plan Document, the Plan Document controls.

The SPD also states that Plan participants have the right under ERISA to obtain Retirement Plan documents from the Plan Administrator upon written request, and provides the address for the Plan Administrator elsewhere in the document. On its first page, however, Cytrnbaum's Employee Benefits Handbook (which included the SPD) states in enlarged, bold letters: "If this handbook does not provide the specific information you need, please contact the Amoco Benefits Center at 1(800) 890 4100." Lawrence Aff., Exh. 1. The SPD itself also provides a mailing address for the Benefits Center and identifies it as the Benefits Administrator.

In addition to participating in the Retirement Plan, Cytrynbaum was a participant in Amoco's Consolidated Welfare Benefit Plan ("Medical Plan"). The Medical Plan provides that if a participant attains retirement status before leaving employment, continuing Medical Plan coverage is available.

Amoco notified Cytrynbaum in February, 1999, that her employment would be terminated effective April 10, 1999, as part of the reorganization of the company following its merger with British Petroleum Company. Her severance notice and package included, among other things, an Employee Termination Agreement, Severance Termination Checklist, a Retirement Plan Election Form and retirement benefits estimate. As of the date of termination, Cytrynbaum was 62 years and seven months old and had been employed by Amoco Production a total of ten years and seven months. Under the Plan Document, therefore, Cytrnbaum had not reached the Normal Retirement Age of 65 or achieved Earliest Retirement Age because she did not have 15 years of service and her age

and years of service did not total 75 as required for 75–Point Status. Accordingly, the retirement benefits estimate and Election Form Cytrynbaum received in her severance package did not include a lump sum option for payment of Cytrynbaum's vested retirement benefits.

Sometime after receiving the February, 1999, severance package, Cytrynbaum wrote a manager in Amoco's Human Resource department, noting that the retirement benefits estimate she had received did not include a lump sum payment option and asking if it was available. By letter dated March 4, 1999, an Amoco representative responded that she should direct her question to the Amoco Benefits Center and provided her with its toll-free number. There is no evidence in the record that Cytrynbaum contacted the Benefits Center then as suggested.

On March 11, 1999, Cytrynbaum executed the required Employee Termination Agreement, and pursuant to the severance agreement, subsequently received a severance benefit payment of $41,800. Also on March 11, Cytrynbaum executed the Retirement Benefits Election Form, but rather than selecting one of the annuity options it offered, she selected a handwritten option, added by her attorney, for the lump sum payment of her retirement benefits.

The Election form stated it should be mailed to the Amoco Benefits Center upon completion, but did not provide an address for the Benefits Center. Joint Ex. 11. The Severance Checklist provided to Cytrynbaum in the same package as the Election Form also directed that the Election Form be mailed to the Benefits Center and provided a Lincolnshire, Illinois mailing address for the Benefits Center and its toll-free information line. Cytrynbaum or her attorney nonetheless mailed the form directly to the Chicago,

Illinois address of Amoco Corporation, the Plan Administrator of the Retirement Plan, rather than to the Amoco Benefits Center. Her form was never returned as undeliverable.

Cytrynbaum's attorneys submitted written requests for various Plan documents by letters dated March 18, April 27 and June 3, 1999. All three letters were addressed to Amoco Corporation, as the Plan Administrator, at its corporate headquarters, and none were returned as undeliverable. Amoco reports that these requests were in fact received and forwarded to the Amoco Benefits Center, which generally responds to such requests, but that the Benefits Center did not respond to Cytrynbaum's letters because it presumed Amoco had already done so. Benefit Center records also indicate that Cytrynbaum called the Benefits Center information line three times during this period to receive counseling and information regarding her pension/retirement benefits, but never requested Plan documentation in these calls.

When no response to her March, April and June letters was received, Cytrynbaum's attorneys made a fourth request in writing for Plan documents, this time to Amoco's legal department, on September 10, 1999. Amoco responded by sending Cytrynbaum's counsel the requested documents by letter dated September 27, 1999.

In her April 27 and September 10 letters, Cytrynbaum also requested a response to her handwritten election of a lump sum payment of retirement benefits on her March 11 Retirement Benefits Election Form. On December 7, 1999, Cytrynbaum, this time in a letter mailed to the Amoco Benefits Center, again requested a response. As of August, 2000, when she filed this action, Cytrynbaum had not received a response to these letters or her attempted lump sum payment election.

At no point in this process and before filing this action did Cytrynbaum claim or request continuing Medical Plan coverage from Amoco following termination of her employment.

### Standard of Review on Summary Judgment

Summary judgment is granted when there is no genuine issue of material fact and the moving party is subject to judgment as a matter of law. Fed.R.Civ.P. 56(c). When reviewing cross-motions for summary judgment, the " 'review of the record requires [the court to] construe all inferences in favor of the party against whom the motion under consideration is made.' " *Pirkheim v. First Unum Life Insurance*, 229 F.3d 1008, 1010 (10th Cir. 2000).

### Discussion

A. *Lump Sum Payment of Retirement Benefits*

Cytrynbaum's first claim is that Amoco has improperly denied her a lump sum payment of the vested retirement benefits due her under the Retirement Plan. The parties initially dispute whether this issue is to be determined under a *de novo* standard of review or the deferential arbitrary and capricious standard.

It is well established that the arbitrary and capricious standard applies when the relevant plan documents provide the plan administrator with discretion to construe plan terms and determine eligibility for benefits. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Fought v. Unum Life Ins. Co.*, 379 F.3d 997, (10th Cir.2004). It is undisputed here that the Retirement Plan grants Amoco, as the Plan Administrator, just this discretionary authority. Cytrynbaum advances various arguments that Amoco is nonetheless not entitled to deferential review, most of which are based on Amoco's al-

leged obligation to respond to her election of a lump sum payment option and its failure to do so. Amoco responds that this is a mode of payment dispute, not a denial of benefits dispute, and as such is subject to arbitrary and capricious review under relevant Tenth Circuit authority. Notwithstanding the vigorous back-and-forth on the issue by the parties, this dispute is immaterial because, even assuming the non-deferential *de novo* standard applies, Cytrynbaum has failed to demonstrate she is entitled to elect and receive her retirement benefits in a lump sum payment.

Cytrynbaum *de facto* concedes she is not entitled to elect a lump sum payment under the Retirement Plan Document because she had not attained either Normal Retirement or Earliest Retirement Age at the time Amoco terminated her employment. She contends, however, that the Retirement Plan Document conflicts with the SPD on this point and that the SPD would allow her to elect a lump sum payment rather than annutized payments. She further asserts that in the case of such conflicts, the terms of the SPD control over the Retirement Plan Document.

Cytrynbaum's argument is flawed in several respects, including its key assertion that the SPD conflicts with the Retirement Plan Document in describing when a Plan participant is eligible to elect a lump sum payment. The SPD clearly instructs participants that "you may elect [the lump sum option] *if* . . . you are eligible for an early, normal or late retirement benefit," and sets out the circumstances under which a participant is eligible for an early, normal or late retirement benefit. These circumstances track those stated in the Retirement Plan Document. Accordingly, the SPD does not conflict with the Retirement Plan Document in describing when a

participant is eligible to elect a lump sum payment of retirement benefits, and neither document provides Cytrynbaum with this option in light of the undisputed fact that she had not reached either Normal or Earliest Retirement Age at the time of termination.

■ Cytrynbaum also argues she is eligible to receive a lump sum payment of retirement benefits based on a Retirement Plan Benefit Estimate she received in December 1998 that provided her with an estimated lump sum payment amount. This estimate, however, was "based on a termination date of September 1, 2000," some 16 months *after* Cytrynbaum's actual April, 1999 termination date. As a result, this document is not probative of her eligibility for a lump sum payment of benefits in April, 1999.[2]

Cytrynbaum's reliance on certain documents she received in connection with her 1999 severance is also misplaced. First, fairly read, these documents are at best silent or ambiguous regarding the circumstances under which severed participants are eligible to receive a lump sum payment of vested retirement benefits. Second, as Cytrnbaum admits, the Retirement Plan cannot be amended by the Retirement Plan Election Form or the other informal documents she cites. Pls.' Br. at 12; *see, e.g., Miller v. Coastal Corp.,* 978 F.2d 622, 624 (10th Cir.1992) (ERISA prohibits modification of employee benefit plan by any communication other than a formal plan document or formal plan amendment executed pursuant to written amendment procedures); *Straub v. Western Union,* 851 F.2d 1262, 1265 (10th Cir.1988) (same). Thus, even if the cited severance documents can be read as contradicting the Retirement Plan Documents and SPD by

---

**2.** It also appears this 1998 Benefit Estimate is consistent with the Retirement Plan Document and SPD because Cytrynbaum would have achieved 75–Point Status if she had remained employed with Amoco through September 1, 2000.

providing that Cytrynbaum and all other participants in the 1999 severance program are automatically entitled to elect and receive retirement benefits in a lump sum, these statements do not entitle Cytrynbaum to a payment option that is not available to her under the Retirement Plan.

Finally, I find no merit in Cytrynbaum's contention that she is entitled to a lump sum payment of benefits, regardless of her ineligibility for this mode of payment under the Retirement Plan, as a result of Amoco's failure to respond to her addition and selection of this option on her Retirement Plan Election Form.

### B. Continuing Medical Plan Coverage

■ In her second claim Cytrynbaum seeks an order declaring that she has achieved "retirement status," and is therefore eligible to continuing coverage under the Medical Plan. Cytrynbaum asserted this claim for the first time in this lawsuit.

■ Exhaustion of administrative remedies is an implicit prerequisite for seeking judicial relief under ERISA. *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir.1998). Cytrynbaum admits she did not exhaust her administrative remedies with respect to her Medical Plan claim, but argues her claim should nonetheless be allowed to proceed under the futility exception to the doctrine. This exception is "limited to those instances where resort to administrative remedies would be clearly useless." *Id.* at 1264. Cytrynbaum offers no evidence or even explanation supporting her contention that

it would be futile for her to bring her claim for medical benefits directly to Amoco. Accordingly, Cytrynbaum's undisputed failure to exhaust her administrative remedies before bringing suit bars this claim.[3] *See id.* at 1263–64.

### C. Civil Penalties for Untimely Production of Plan Documents

■ In her final claim, Cytrynbaum asserts she is entitled to civil penalties of $17,160.00 because Amoco did not respond within 30 days to her initial, March 18, 1999, request for Retirement Plan documents. This claim is based on two ERISA provisions, the first of which requires plan administrators to provide plan participants with plan documents upon written request, *see* 29 U.S.C. § 1024(b)(4), and the second of which provides that a plan administrator that fails to comply with such a request within 30 days "may *in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1) (emphasis added). By regulation, the maximum amount of this civil penalty is currently $110 a day, *see* 29 C.F.R. § 2575.502c–1, yielding a maximum penalty in this case of $17,160.00.

■ In exercising my discretion to award a statutory penalty under these provisions, I may consider a variety of factors, including whether the untimely production of the requested plan documents prejudiced the participant or was the result of the plan administrator's bad faith. *See,*

---

**3.** Even if Cytrynbaum's claim to continuing Medical Plan coverage was not barred on this basis, I find Amoco is entitled to summary judgment on this claim based on the undisputed fact that Cytrynbaum had not achieved retirement status, *i.e.*, Normal Retirement Age or Earliest Retirement Age, at the time her employment terminated as required for continuing coverage under the Medical Plan. *See*

Medical Plan SPD, Jt. Exh. 22, at 2.6 (participants may be eligible for continuing medical coverage "[i]f you achieve retirement status under a company retirement plan"), 2.7 (company-supported medical coverage ends for participants "on the earliest date ... your employment terminates for any reason other than death, *retirement*, or disability.") (emphasis added).

*e.g., Deboard v. Sunshine Min. & Refining Co.,* 208 F.3d 1228, 1244 (10th Cir.2000).

Cytrynbaum contends she is entitled to the maximum possible statutory penalty in this case based solely on the fact that her attorney mailed three letter requests to the address for the Plan Administrator stated in the SPD, and another to Amoco's legal department, before Amoco produced the requested documents on September 27, 1999, more than 150 days after the statutory 30 day period. She does not contend she was prejudiced by Amoco's tardy response or that Amoco acted in bad faith, and rather asserts these factors are legally irrelevant and should be disregarded. Amoco responds by suggesting that the confusion and delay surrounding Cytrynbaum's requests was due to the decision of Cytrynbaum (or her attorney) to send these requests to Amoco's general corporate address rather that to the Amoco Benefits Center, which the SPD and various other severance documents identified as the contact for information requests.

Under the circumstances of this case, I see no cause for assessing the maximum civil penalty against Amoco for its undisputed delay in producing the Retirement Plan documents requested by Cytrynbaum. While Cytrynbaum is technically correct that these requests were properly directed to the address provided in the SPD for the Plan Administrator, it is also clear that much of the relevant Plan documentation directed information inquiries such as this to the Amoco Benefits Center. Cytrynbaum was obviously familiar with these services, as she personally contacted the Benefits Center regarding retirement benefits on several occasions during the period in question. She or her attorney could easily have contacted the Benefits Center to request the Plan documentation but did not do so. Accordingly, they bear some responsibility for the delay in receiving the requested Plan documents.

There is also no evidence Cytrynbaum was prejudiced in any manner by Amoco's delayed response to her request[4] or that Amoco's failure to respond properly was the result of anything other than a lack of communication between Amoco's corporate office and the Amoco Benefits Center. While I do not condone this lack of communication and resulting delay, these circumstances simply do not warrant the $17,160 penalty sought by Cytrynbaum or, for that matter, any sum.

Cytrynbaum also seeks an award of reasonable attorney fees and costs she has incurred in this action. Pursuant to ERISA section 501(g)(1), I have discretion in determining whether to allow such an award. *See* 29 U.S.C. § 1132(g)(1). Given the circumstances and rulings set forth above, I deny Cytrynbaum's request for an award of her attorney fees and costs in this action.

Accordingly, for the reasons stated above, I deny Cytrynbaum's motion and grant Amoco's cross-motion. Summary judgment shall be entered against Cytrynbaum and for Amoco on all claims.

IT IS SO ORDERED.

---

4. In this regard, I note that although Cytrynbaum received the requested Plan documents in September 1999, she did not file a claim for any benefits with the Benefits Center until December 1999, and did not file this lawsuit until August 2000.